## LOCKEY, APPELLANT, v. WALKER, RESPONDENT.

[Submitted October 24, 1892.  Decided November 28, 1892.]

MUNICIPAL CORPORATIONS — *Levy and collection of taxes.* — The power of an incorporated city to levy and collect lawful taxes in conformity with the provisions of its charter and lawful ordinances passed thereunder, was not repealed either expressly or by implication by the adoption of the Constitution or the passage of the Revenue Act of 1891.

SAME — *Assessment — Basis of levy.* — The municipal authorities of an incorporated city may make a legal assessment in electing to take the assessment made by the county and State assessing authorities as the basis for the levy of municipal taxes on property within such city; and the levy of lawful taxes thereon by such city for municipal purposes according to the provisions of its charter and ordinances constitutes a legal levy.

SAME — *Collection of taxes — Power to sell real estate.* — The terms of a city charter which provide that the city council may enforce the payment of a tax levied for municipal purposes in any manner that may be prescribed by ordinance, not repugnant to the Constitution of the United States or the Organic Act of the Territory, are sufficient to authorize the city to collect a general tax levied upon real property by direct sale of the land on which the same was levied after advertisement thereof, provided the proceedings prescribed by ordinance in that regard are not repugnant to the Constitution and general statutes of the State.

*Appeal from First Judicial District, Lewis and Clarke County.*

Action to restrain by injunction a sale of real estate by a city treasurer to enforce the collection of a municipal tax.  Plaintiff appeals from an order by BUCK, J., refusing to grant a temporary injunction.  Affirmed.

*George F. Shelton,* and *Massena Bullard,* for Appellant.

I.  The legislative assembly has the right to revoke and repeal the provisions of charters granted to municipal corpo-

VOL. XII.—37.

rations. (1 Dillon on Municipal Corporations, §§ 54, 62, 87; *People* v. *Morris*, 13 Wend. 325; *East Hartford* v. *Hartford Bridge Co.* 10 How. 511; *Layton* v. *New Orleans*, 12 La. An. 515; *People* v. *Hill*, 7 Cal. 97; *Girard* v. *Philadelphia*, 7 Wall. 7; *San Francisco* v. *Canavan*, 42 Cal. 557; *Payne* v. *Treadwell*, 16 Cal. 233; *Donahue* v. *Graham*, 61 Cal. 276; *Trustees of Public Schools* v. *Taylor*, 30 N. J. Eq. 618; *McDonald* v. *Patterson*, 54 Cal. 245.)

II. The legislature in granting the charter to the city of Helena, used the words "taxable property," intending to cover' such property as from time to time should be specified in the revenue law, and that the assessment should be in accordance with the requirements, and in the same manner as taxes for county purposes. (2 Dillon on Municipal Corporations, § 772; *City of Buffalo* v. *Le Conteul*, 15 N. Y. 451; *Ontario Bank* v. *Bunnell*, 10 Wend. 186; *American Tr. Co.* v. *City of Buffalo*, 20 N. Y. 388; *Dunlieth etc. Co.* v. *Dubuque*, 32 Iowa, 427; *Barret* v. *Henderson*, 4 Bush, 255; *State* v. *Mount Pleasant Council*, 8 Rich. 214; Cooley on Taxation, § 279; *Sanders* v. *Butler*, 30 Ga. 679.) If there were any doubt about this before the admission of the State into the Union, the constitutional provisions have cut off all doubt, and have left only one law, viz.: The general revenue law, passed by the legislative, assembly of the State, to which reference has been made. Consequently, when the city assessor and the city collector and treasurer assumed to act under an ordinance which was in violation and contrary to the revenue law above cited, their acts were necessarily void.

III. The language of the charter is not sufficient to authorize the city council to pass an ordinance providing for the sale of property for taxes. It has been uniformly held that in the absence of an express authority in the charter authorizing the sale of property for taxes none can be presumed. (*McInerny* v. *Reed*, 23 Iowa, 410; *Merriam* v. *Moody*, 25 Iowa, 163; *Paine* v. *Spratley*, 5 Kan. 525; Dillon on Municipal Corporations, § 818.) These authorities establish beyond question that there is no authority in a city to sell property for taxes, under a charter similar to that of the city of Helena.

*Sydney H. McIntire*, City Attorney, for Respondent.

I. When the city of Helena was created by charter the power was vested in it "to levy and collect *ad valorem* taxes for city purposes upon all taxable property, real, personal, and mixed within the city limits (charter, art. v. § 1)." This grant was a proper one. (Cooley on Taxation, p. 679; *Justice* v. *Logansport*, 101 Ind. 326). The adoption of the Constitution and the passage of the Revenue Law of 1891 did not change the charter of the city of Helena, for in several sections of those laws there are direct references made to taxation in cities; and the Constitution expressly declares that "all laws not inconsistent with this Constitution, shall be and remain in full force until altered or repealed." (Art. xx. § 1.) Taxes are levied for the purpose of paying the debts of the city, the incurring of which the legislature has authorized. (Acts 2d Sess. 1891, p. 309.) Contracts have thereby been created. "The creditors have a right to rely upon the power of taxation for their security, and it cannot afterward be so far restricted as to prejudice their demands" (Cooley on Taxation, pp. 76, 346; *Wolff* v. *New Orleans*, 103 U. S. 358; *Louisiana* v. *Pilsbury*, 105 U. S. 278); nor could this be done even by the Constitution. (*Opinion of the Court*, 58 N. H. 623.) In this respect the charter of the city of Helena is a contract, created by a vote of the people, the obligations of which cannot be impaired by any act of the legislature. The Act of 1891 expressly excepts incorporated cities and towns from following the county assessments, so that the city assessor would have the right either to make an original assessment each year or adopt the county assessment as a basis for his own, if he saw fit (Laws 2d Sess. 1891, § 49; Cooley on Taxation, p. 62); but the provisions of the Constitution relative to general laws refer only to State taxes. (2 Dillon on Municipal Corporations, §§ 770, 771; *Kansas City* v. *Johnson*, 78 Mo. 661, and cases cited; *Shoalwater* v. *Armstrong*, 9 Humph. 217, and cases cited; *Savannah* v. *Jessup*, 106 U. S. 569; *Municipality No. 2* v. *New Orleans & C. R. R. Co.* 10 Rob. [La.] 187.)

II. The taxes levied in this case were the general city taxes. Section 1 of article v. of the charter of the city of Helena provides "and may enforce the payment in any manner prescribed by ordinance not repugnant to the Constitution of

the United States or the Organic Act of this Territory." This language is broad enough to include both collection by sale of property and by suit. The usual method of collecting taxes is by sale; the revenue law of the State provides for it (Acts 2d Sess. 1891, § 113–115); it has always been considered due process of law for the collection of revenue. There is nothing repugnant to the Constitution of the United States or of this State in this method; and the existence of the power of sale seems clear. (2 Dillon on Municipal Corporations, § 819; *Murray's Lessee* v. *Hoboken etc. Co.* 18 How. 278; *Kelly* v. *Pittsburgh,* 104 U. S. 78; *Dugan* v. *Mayor,* 1 Gill & J. 499; *St. Louis* v. *Russell,* 9 Mo. 503; *St. Louis* v. *Allen,* 13 Mo. 400.) The grant to the city of the right to enforce the payment of taxes in any manner must necessarily grant the right to make taxes a lien upon real property. (*Sharp* v. *Speir,* 4 Hill, 83; *Echback* v. *Pitts,* 6 Md. 71.) The language of the charter of the city of Helena is broad enough to cover both methods of collection, by sale and by suit, and these are concurrent. (*Dugan* v. *Mayor,* 1 Gill & J. 499.)

HARWOOD, J. — This action involves questions relating to the levy and collection of taxes by the municipal government of the city of Helena. The action was instituted to restrain the treasurer of said city, by injunction, from proceeding to sell certain real estate owned by appellant to enforce collection of taxes levied thereon in the year 1891 by said city. The complaint alleges the municipal corporate character of said city; the official capacity of defendant as treasurer thereof; plaintiff's ownership of the real estate in question, and description thereof; that defendant, acting in his official character as such treasurer, had advertised for sale, and was about to sell said property, at a time stated, for alleged delinquent taxes assumed to have been levied thereon by said city in the year 1891, and then proceeds to allege specifically the failure on the part of the city officers and agents to perform each and every act and proceeding required by the ordinance of said city, as to the listing of said property for assessment, by separate parcels, under the name of the owner, giving the value of the ground and improvements separately, or to require from the owner any such assessment list, or to give

notice of the meeting of the city council as a board of equalization; that said council failed to convene as such board, or to perform any of the duties thereof, as required by the ordinance of said city; that no list of said delinquent taxes was made out or delivered to the city attorney, as required by the ordinance of said city; and that no suit has been commenced to recover said alleged taxes. On the commencement of the action, appellant moved the court for the issuance of an injunction restraining the sale of said real estate, as contemplated and threatened by respondent, pending the determination of the action. But the court ordered respondent to show cause, if any existed, why such temporary injunction should not issue, and upon the showing made pursuant to that order, by affidavits accompanied by duly authenticated copies of the public records, as to the proceedings whereby said taxes were levied, the court refused to grant the order of injunction prayed for; and from that order, refusing to grant such injunction, this appeal is prosecuted.

Three propositions of law are maintained by appellant's counsel, which will be considered in the order treated on the argument of this appeal. The first is "whether, after the adoption of the Constitution and the admission of the State into the Union, the city of Helena retained the right to exercise the taxing powers conferred by the Constitution, aside and distinct from the general revenue law of the State." After reviewing the provisions of the city charter adopted prior to, and existing when the organic change from territorial to State form of government took place, and the various provisions of the Constitution, and the statutes passed by the State legislature, relating to levy and collection of taxes for State, county, and municipal purposes, appellant's counsel affirms "that the assessment and levy of taxes under the old ordinance of the city of Helena were void, for the reason that the ordinances were repealed by the adoption of the Constitution and the subsequent passage of the Revenue Law of 1891." The tax in question was levied as the result of proceedings in part under the general revenue law of the State, and in part pursuant to the charter and ordinances of said city; that is, the assessment lists and valuation of property for taxation made by the State and county

authorities under the provisions of the general revenue law for the year 1891 were adopted by the city authorities as the basis for taxation of all taxable property lying within the corporate limits of the city of Helena, for municipal purposes, for the year 1891; and upon that assessment the municipal taxes for that year were levied by the city pursuant to the provisions of its charter and ordinances. And the sale sought to be restrained is about to be made, as provided by ordinance, to enforce collection of the tax so levied on appellant's real estate. It is that part of said proceedings assumed to be carried out under the authority of the city charter and ordinance which is challenged by appellant as unlawful and void, because, according to the contention of his counsel, all proceedings for the assessment, levy, and collection of municipal taxes, since the adoption of the Constitution, must be proceeded with under the general revenue law of the State, and not under the ordinances of said city.

The provisions of the Constitution bearing immediately upon the subject are as follows: "The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes; but it may by law vest in the corporate authorities thereof powers to assess and collect taxes for such purposes." (§ 4, art. xii.) "Taxes for city, town, and school purposes may be levied on all subjects and objects of taxation; but the assessed valuation of any property shall not exceed the valuation of the same property for State and county purposes." (§ 5, art. xii.) "Taxes shall be levied and collected by general laws, and for public purposes, only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." (§ 11, art. xii.) The 49th section of an act passed by the second session of the legislative assembly of this State, entitled "An act concerning revenue," provides as follows: "The assessment made by the county assessor, and that of the State board of equalization, as apportioned by the board of county commissioners to each city, town, school, road, or other district, in their respective counties, is the only basis for taxation for the county, or any subdivision thereof, except in incorporated cities and towns, and may also be taken as such

basis in incorporated cities and towns, when the proper author-
ities may so elect."

The provisions of the section of the statute just quoted appear
to be in harmony with the Constitution; and in our opinion the
action of the proper municipal authorities of the city of Helena,
in electing to take the assessment made by the county and State
assessing authorities, under the provisions of the statute above
quoted, as the assessment for the levy of municipal taxes on
property within said city, constituted a legal assessment; and
that the levy of lawful taxes thereon by the city for municipal
purposes, according to provisions of the charter and ordinances
of said city, was a legal levy. We find no provisions of the
Constitution or statute which, either expressly or by implication,
take away the power of incorporated cities to levy and collect
lawful taxes, in conformity with the provisions of the charter
and lawful ordinances passed thereunder.

The State revenue law has not provided for the levy and
collecting of municipal taxes for the purposes of incorporated
cities, together with State and county taxes. It might be wise
if such a system were adopted, so as to consolidate the tax-
gathering into one system of proceedings, as to assessment, levy,
and collection thereof, and thereby save the citizens the incon-
venience of dealing with two or more distinct tax-gathering
authorities, pursuing separate lines of action, and also save the
public and private expense attending the same, and bring
together, under one system of proceedings and records, the
liens upon property which accrue by reason of the levy and
enforcement of taxes. But that is a subject for legislative con-
sideration. The statute adopted since the Constitution provides
that one assessment made by the State and county authorities
might suffice as the basis upon which to levy all State, county,
and municipal taxes authorized by law; and this was some
advancement towards a desirable simplification of the subject.
But the measure has not been carried beyond that provision.
As the law stands, it leaves with municipal authorities of incor-
porated cities the power to levy and collect the taxes authorized
by law for municipal purposes. The provisions of section 4
of article xii. of the Constitution contemplate that such author-
ity may be vested in the city government.

The second proposition contended for by appellant is that the city has no authority to enforce collection of said tax by direct sale of the land on which the same was levied, after advertisement thereof, in the manner provided by ordinance. The city charter provides: "The city council shall have power and authority to levy and collect *ad valorem* taxes, for city purposes, upon all taxable property, real, personal, and mixed, except as herein excepted, within the city limits, not exceeding three mills per annum upon the assessed value thereof for general purposes, and not exceeding three mills per annum upon the assessed value thereof for fire department purposes, in addition to the tax authorized to be levied for street purposes, under the provisions of the act of the legislative assembly of Montana entitled 'An act to provide for the levy of street taxes in incorporated towns and cities,' approved March 7, 1883, and may enforce the payment of such taxes in any manner that may be prescribed by ordinance, not repugnant to the Constitution of the United States or the Organic Act of this Territory." (§ 1, City Charter, Sess. Laws, 1885.) The power granted by this section of the charter is not only "to levy and collect" *ad valorem* taxes for city purposes, but the power is also granted to "enforce the payment of such taxes in any manner that may be prescribed by ordinance, not repugnant to the Constitution of the United States or the Organic Act of this Territory." The Organic Act has been superseded by our State Constitution, and these statutes have been continued in force, as modified by any provisions of the State Constitution, which provides otherwise. It is not contended, however, in respect to the point now under consideration, that there is any repugnancy between this statute and the provisions of the State Constitution.

The point made by appellant on this branch of the case is that the authority granted by the charter does not confer power on the city to enforce collection of the general taxes authorized to be levied by direct sale of the real estate on which the same was levied, after due notice as provided by ordinance. It is apparent from the provisions of the charter just quoted that the legislature took into consideration the matter of the enforcement of the general tax authorized to be levied; and we cannot doubt, from the terms inserted in the charter, that the legis-

lature contemplated the enforcement of the tax by those ordinary methods generally employed in such cases. When the legislature made this provision, it understood that the usual manner of enforcing general taxes on real estate, for municipal as well as State and county purposes, was by applying the same as a lien thereon, and, if not paid within the time prescribed, to cause such real estate to be sold, after giving proper public notice as required by law. In delivering the opinion of the court in the case of *Kelly* v. *Pittsburgh,* 104 U. S. 80, Mr. Justice Miller observed that "taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is, and always has been, due process of law."

The conclusion we arrive at, after consideration of the question raised and the authorities on this subject, is that the terms of the charter are sufficient to authorize the city to pursue the usual method as to the enforcement of the general taxes authorized to be levied, provided the proceedings prescribed by ordinance in that regard are not repugnant to the provisions of the Constitution and general statutes of the State. Our reason for so holding is that to conclude otherwise would seem to deny any meaning or force to the provision of the charter that the city "may enforce payment of such tax in any manner that may be prescribed by ordinance, not repugnant" to the general fundamental law of the jurisdiction.

The other provision of the charter, empowering the city "to levy and collect" *ad valorem* taxes, would be sufficient to enable it to enforce collection by ordinary judicial proceedings, without the clause expressly providing for the enforcement thereof. (2 Dillon on Municipal Corporations, § 818, and cases cited.) Therefore, unless the latter clause is held to grant to the city power to provide for the enforcement of said taxes by some usual method not contrary to the Constitution and general laws of the State, other than by ordinary judicial proceeding, the clause under consideration would seem to stand as nugatory; for without it the city had power to sue by ordinary action to

enforce collection of taxes lawfully levied. We have been unable to find authority or reason for denying to those terms of the charter any force. The cases cited by appellant as supporting his position relate to the enforcement of special or extraordinary taxes, or levies imposed on abutting property for certain local improvements, such as paving streets and walks and the like, instead of the general tax for general municipal purposes authorized by the charter, as in the case at bar. There can be no doubt that a distinction exists between the two classes of levy. Such distinction is recognized throughout the authorities upon the subject.

The third proposition treated by counsel relates to the remedy sought to be invoked in this action. But this question becomes immaterial, in view of the conclusion which we have reached upon the main propositions involved in the case.

The order of the court below, appealed from, is affirmed.

*Affirmed.*

BLAKE, C. J., and DE WITT, J., concur.